**FILED**
**Oct 22, 2018**
**03:57 PM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| **Samuel Gothard,** | ) | **Docket No.: 2016-01-0662** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 60151-2015** |
| **Tractor Supply Co.,** | ) | |
| **Employer.** | ) | **Judge Thomas Wyatt** |

## COMPENSATION ORDER DISMISSING CLAIM ON SUMMARY JUDGMENT

This claim came before the Court on October 17, 2018, on Tractor Supply Company's Motion for Summary Judgment to dismiss Samuel Gothard's claim for additional permanent partial disability (PPD) benefits. As grounds, Tractor Supply asserted Mr. Gothard's claim was already settled. For the reasons below, the Court dismisses Mr. Gothard's claim on summary judgment.

### History of the Claim

*Factual Background*

Mr. Gothard suffered a right rotator-cuff injury on July 31, 2015. Tractor Supply authorized treatment by Dr. Barry Vaughn, who, after performing two surgeries, set maximum medical improvement (MMI) on August 23, 2016, and rated impairment at ten percent to the body.

The parties agreed to terms and presented the proposed settlement to the Court on October 28, 2016. Mr. Gothard stated that he entered into the settlement because Dr. Vaughn's MMI finding placed him in a position of financial strain by terminating his temporary disability benefits even though he was unable to work. Mr. Gothard and his counsel signed the Settlement Agreement and the Explanation of Benefits (EOB) sheet in

1

support of the proposed settlement, which the Court approved after interviewing Mr. Gothard.[1]

The Settlement Agreement contained the following language:

Pursuant to T.C.A. §50-6-207(3)(A), Employee is entitled to 450 weeks times his impairment rating which equates to **$22,420.80** in permanent partial disability benefits.

If at the expiration of the initial compensation period occurring on July 4, 2017, Employee has not returned to work with any employer or has returned to work at a lower rate of pay than Employee received from his pre-injury Employer on the date of injury, Employee may file a Petition for Benefit Determination in order to determine whether he is entitled to increased benefits pursuant to the factors enumerated in T.C.A. §50-6-207(3)(B) and referenced in the Explanation of Benefits Sheet. Employee must file the Petition for Benefit Determination within one (1) year after the initial compensation period expires on July 4, 2017.

**At the conclusion of the compensation period Employee did not return to work with any employer or has returned to work and is receiving less than his pre-injury wages on the date of injury. Therefore, Employee is entitled to the additional amount of $7,847.28, which was calculated by multiplying his/her award by 1.35.**

**Employee was more than 40 years of age at the time the compensation period ended. Therefore, Employee is entitled to the additional amount of $6,053.62, which was calculated by multiplying his award by 1.2.[2]**

---

[1] Tractor Supply produced the agreement and EOB in support of summary judgment. The Court considered the statements in these documents under its authority to take judicial notice of adjudicative facts in the same proceeding. *See* Tenn. R. Evid. 201(a)-(b) (2017).

[2] The quoted language combines language from two Bureau order templates. The first two quoted paragraphs track language in the template for a settlement providing the employee an original award of PPD benefits but leaving open the employee's right to pursue a resulting award after the expiration of the original compensation period. The language in bold print comes from the template for a settlement providing an employee both original and resulting awards.

(Bold print original.)

The agreement also contained this language taken from Bureau templates:

> The Parties have entered into this voluntary settlement of all matters in issue under the terms and conditions hereinafter set forth, with full knowledge of their rights and responsibilities[.] Employee has acknowledged by his signature that he is not obligated to enter this settlement agreement and has the right to have a Compensation Hearing before a Judge in the Court of Workers' Compensation Claims. Employee acknowledges that by signing this settlement agreement, Employee is waiving the right to have a Compensation Hearing[.]
>
> Employee acknowledges that if he were to try this case in the Court of Workers' Compensation Claims the award *may* be more or less than the agreed upon settlement amount and *may* not be ordered in a lump sum payment[.]
>
> This agreement represents the entire Agreement and complete understanding of the Parties with no representations or promises other than those contained herein. All prior negotiations, representations, and agreements are merged into this contract[.]

The agreement made the following reference to the EOB that Mr. Gothard signed: "Employee has been provided with, reviewed, and signed the 'Explanation of Workers' Compensation Benefits' and been provided the opportunity to ask questions regarding the settlement agreement." The EOB included language that detailed the potential for an award in excess of specific multipliers based on the factors in Tennessee Code Annotated section 50-6-242.

The Court's approval order contained the following language: "The attached written agreement and all its terms are incorporated in their entirety into this Order." The order also found that Mr. Gothard understood his rights and was receiving substantially the benefits provided for by law.

The settlement preserved Mr. Gothard's right to future medical benefits with Dr. Vaughn, who performed a third surgery in June 2017 that was complicated by a serious infection. He later declined to treat Mr. Gothard, and Tractor Supply authorized care by Dr. Brett Sanders. Dr. Sanders performed a fourth surgery and placed Mr. Gothard at

MMI on October 9, 2018.[3] His most recent record took Mr. Gothard off work permanently. Mr. Gothard has not worked anywhere since settlement.

Mr. Gothard filed his PBD seeking "additional permanent partial disability benefits pursuant to TCA § 50-6-242 and/or § 50-6-207(3)(B)." Tractor Supply moved for summary judgment.

*The Parties' Arguments*

Tractor Supply contended that the Court's approval order, which incorporated the Settlement Agreement, fully concluded all Mr. Gothard's claims to PPD benefits, including those under section 50-6-242. It asserted that the approved settlement negates the single, essential element of Mr. Gothard's current claim—his right to pursue additional PPD.

Tractor Supply also argued that his signature on the EOB negates Mr. Gothard's claim that he did not intend to waive benefits under section 50-6-242 by signing the Settlement Agreement. It pointed out that 50-6-242 benefits are expressly discussed in the EOB, and the EOB is referenced in the agreement. It also contended that, by signing the agreement, Mr. Gothard waived his right to file a Request for a Compensation Hearing, which is the only mechanism under the Workers' Compensation Law for pursing PPD benefits. Thus, Tractor Supply urged the Court to dismiss Mr. Gothard's PBD on summary judgment.

Mr. Gothard countered that summary judgment is inappropriate because genuine issues of material fact exist. He argued that the express language of the agreement preserves his right to pursue additional PPD benefits since he was unable to return to work by July 4, 2017. He also asserted that the agreement did not specifically mention benefits under section 50-6-242, thus he did not waive his rights to them by signing the agreement. He contended that the EOB is not a legally-binding document, so it cannot impact the terms of the settlement. In support, Mr. Gothard cited language in the agreement stating that it constitutes the entire agreement between the parties.

Mr. Gothard also argued that a genuine issue of fact exists as to whether Dr. Vaughn placed him at MMI too soon. He contended Dr. Vaughn's incorrect MMI assessment represents a mistake of fact justifying his requested relief because it forced him into an untimely and disadvantageous settlement. He also claimed that summary judgment is inappropriate because he could not have known or expected at the time of the settlement that he would require additional treatment and be rendered totally disabled.

---

[3] The records do not indicate whether Dr. Sanders's MMI date related to the surgery he performed or the entirety of Mr. Gothard's treatment.

4

Finally, Mr. Gothard argued that the General Assembly could not have intended that an employee wait without benefits until the end of the initial compensation period before seeking benefits under section 50-6-242. Thus, he contended that the Workers' Compensation Law itself supports a settlement allowing an employee to settle PPD claims under subsection 50-6-207(3)(B) but later seek benefits under section 50-6-242.

### Findings of Fact and Conclusions of Law

*Summary Judgment Standard*

The Court applied the following standard in *Payne v. D & D Elec.*, No. E2016-01177-SC-R3-WC, 2017 Tenn. LEXIS 215, at *8-9 (Tenn. Workers' Comp. Panel Apr. 18, 2017):

> When a motion for summary judgment is made and supported, the party opposing summary judgment must file a response to each fact set forth by the moving party. The nonmoving party may not rely upon the allegations in the pleadings; to survive summary judgment, the nonmoving party must set forth specific facts showing a genuine issue for trial. Tenn. R. Civ. P. 56.06. The nonmoving party's response "must do more than simply show that there is some metaphysical doubt as to the material facts." The nonmoving party must demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in favor of the nonmoving party.

(Internal case citations omitted.)

*The Finality of Settlement Judgments*

In *Wooley v. Gould, Inc.*, 654 S.W.2d 669, 672 (Tenn. 1983), the Supreme Court noted that "petitions [to reopen a settled workers' compensation claim] have been permitted where there is a claim of fraud or mistake of fact with respect to the condition and degree of disability existing on the date of the settlement order, but not with respect to some increase or decrease of disability thereafter." However, it further cautioned that: "[l]ump sum settlements . . . are ordinarily final and they have essentially the same status as other consent decrees. It is a very difficult and serious matter to undertake to set aside a formal judgment of a court[.]" *Id.* The Court held that post-settlement developments do not provide a basis for reopening a claim because both parties run the risk that the benefit of their bargain will be adversely affected by future events.

In *Johnson v. Pilgrim's Pride, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 20, at *10-12 (Apr. 27, 2016), the Workers' Compensation Appeals Board cited *Furlough v.*

5

*Spherion Atl. Workforce, LLC*, 397 S.W.3d 114 (Tenn. 2013), in holding that relief from the finality of a settlement is "rare and disfavored" and is "an exceptional remedy." The Board reasoned further that the limited protection from fraud or factual error "does not relieve a party from his or her free, calculated, and deliberate choices." Moreover, "the rule affords relief in the most extreme, unique, exceptional, or extraordinary cases."

*Decision*

The Court now considers Mr. Gothard's arguments that his settlement did not preclude benefits under section 242 in light of the above standards. He approached the issue from four directions. First, he claimed that the settlement agreement does not preclude him from seeking additional PPD benefits under section 50-6-242. He next claimed there was a mistake in material fact because Dr. Vaughn erroneously placed him at MMI on August 23, 2016. Mr. Gothard also argued that his medical condition and attendant disability unexpectedly worsened after settlement. Finally, he claimed that the Workers' Compensation Law itself justifies a settlement paying benefits under 50-6-207(3)(B) while still allowing an employee to seek section 242 benefits should circumstances warrant. The Court will address these positions in the order listed.

*Ambiguity in the Settlement Agreement*

In *Wofford v. M. J. Edwards & Sons Funeral Home, Inc.*, 490 S.W.3d 800, 809-10 (Tenn. App. 2015), the Court of Appeals quoted the Supreme Court in *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528:

> It is black letter law that in order for a contract to be consummated, the parties must mutually assent to the material terms[.] Tennessee courts have referred to this requirement as a "meeting of the minds." A meeting of the minds is determined "by assessing the parties' manifestations according to an objective standard." The traditional common-law rule is that where mutual assent is lacking, no contract was ever formed.

(Internal citations omitted.) Thus, if a reasonable person would find that there was no "meeting of the minds" due to the ambiguity of material terms, then no contract exists. Further, in *Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 531 (Tenn. 1991), the Supreme Court held the general rule is that "ambiguities in contracts are construed against the drafter," which in this case is Tractor Supply.

The Court finds that this settlement agreement is ambiguous in several respects. The agreement contains language providing Mr. Gothard the right to seek additional PPD benefits after July 4, 2017, and does not expressly deny his right to seek benefits under section 50-6-242. On the other hand, the agreement includes a waiver of Mr. Gothard's

6

right to a Compensation Hearing and language indicating the parties' intent to fully and finally conclude all PPD claims. Thus, the Court holds that genuine issues of fact exist as to the parties' interpretation of the ambiguous language in the Settlement Agreement.

However, this would not result in the relief Mr. Gothard seeks even if resolved in his favor. First, the Settlement Agreement limits his right to additional PPD benefits to those payable under subsection 50-6-207(3)(B). The settlement paid him those benefits in a lump sum even though they would not be due under the law for eight more months. The fact that the Settlement Agreement does not reference benefits under section 50-6-242 offers no relief to Mr. Gothard. By statute, benefits under 50-6-242 can only be paid "*in lieu of* the increased benefits for which the employee is eligible under § 50-6-207(3)(B)." (Emphasis added.) In other words, Mr. Gothard gave up his right to 242 benefits when he accepted benefits under subsection 50-6-207(3)(B). Finally, Mr. Gothard waived his right to a Compensation Hearing by signing the agreement. Thus, the Court grants summary judgment on the issues involving ambiguities in the agreement.

## *Date of MMI*

The record contains evidence that two physicians differed on the date of MMI. Dr. Vaughn set MMI on August 23, 2016, but Dr. Sanders did not do so until October 9, 2018. Both doctors assigned MMI while they were acting as authorized physicians. Thus, the Court holds that a genuine issue of fact exists on this point.

However, the Court also holds that Mr. Gothard is not entitled to relief even if it were to find that he did not attain MMI until October 9, 2018. Dr. Vaughn's opinion was the only opinion on MMI at the time of settlement. Thus, there could be no mistake of fact as to MMI *at the time of settlement*. The "mistake" created by Dr. Sanders' MMI opinion arose post-settlement and falls into the category of a factor potentially increasing or decreasing the disability award for which there is no remedy. *See Wooley, supra.* Therefore, the Court grants summary judgment on issues pertaining to the MMI date.

## *Other Post-Settlement Developments*

Mr. Gothard also argued that genuine issues of material fact exist as to whether unanticipated developments—the worsening of his injury and his inability to return to work—should allow him to avoid the terms of the agreement. These factors arose after settlement, and, for the reasons above, do not offer an escape from the agreement. Thus, the Court grants summary judgment on these issues.

## *Interaction Between Subsection 50-6-207(3)(B) and Section 50-6-242*

Mr. Gothard's final argument, that the General Assembly intended that an employee settle a claim for enhanced benefits under subsection 50-6-207(3)(B) while

7

retaining the right to seek benefits under section 50-6-242, is incorrect. As pointed out previously, section 50-6-242 clearly states that the benefits under it are *instead of* benefits under subsection 50-6-207(3)(B). His argument that an employee forced to wait until the expiration of the original compensation period before seeking benefits under section 50-6-242 must do so without any benefits is also incorrect. Mr. Gothard could have settled when he did by accepting only an award for the initial compensation period. This approach would have provided him forty-five weeks of benefits while he waited to pursue benefits under section 50-6-242. For this reason, the Court awards summary judgment on the statutory interpretation urged by Mr. Gothard.

Tractor Supply shall pay the $150 filing fee to the Clerk of the Court of Workers' Compensation Claims within five business days after the date this order becomes final. *See* Tenn. Comp. R. and Regs. 0800-02-21-.07 (2018). Tractor Supply shall also file a completed SD-2 form on this claim with the Clerk within ten business days after the date this order becomes final.

**ENTERED October 22, 2018.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order was sent to the following recipients by the following methods of service on October 22, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Email Address |
|------|----------------|------------------|---------|-----------|---------------|
| Robert Sauser Employee Attorney | | | | X | rsauser@sauserlawfirm.com |
| David Noblit Employer Attorney | | | | X | David.noblit@leitnerfirm.com |

Penny Shrum, Court Clerk
WC.CourtClerk@tn.gov

9



## Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

Judge_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):**_____At Hearing:☐Employer☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____ , 20 ___ .

[Signature of appellant or attorney for appellant] _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

　　My employer's address is: _____

　　My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)　　　　　　　　　　　　　　　　　　　RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month        Medical/Dental  $ _____ per month

Groceries          $ _____ per month        Telephone       $ _____ per month

Electricity        $ _____ per month        School Supplies $ _____ per month

Water              $ _____ per month        Clothing        $ _____ per month

Gas                $ _____ per month        Child Care      $ _____ per month

Transportation     $ _____ per month        Child Support   $ _____ per month

Car                $ _____ per month

Other              $ _____ per month (describe: _____ )

10. Assets:

Automobile                 $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                      $ _____        (FMV) _____

Other                      $ _____        Describe: _____

11. My debts are:

Amount Owed                          To Whom

_____                  _____

_____                  _____

_____                  _____

_____                  _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20 _____.

_____
NOTARY PUBLIC

My Commission Expires: _____